**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SAVE OUR COUNTY, INC. | ) | CIVIL ACTION NO. |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE: |
| v. | ) | |
| | ) | **COMPLAINT AND DEMAND FOR JURY** |
| HERITAGE THERMAL SERVICES, INC. | ) | **TRIAL** |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

## COMPLAINT

Plaintiff Save Our County, Inc. ("Save Our County") brings this action pursuant to the citizen suit provision of the Clean Air Act, 42 U.S.C. § 7604(a), and avers the following:

## NATURE OF THE ACTION

1.     Save Our County ("Plaintiff") brings this lawsuit on behalf of itself and the public to stop and prevent Heritage Thermal Services, Inc. ("Heritage" or "Defendant") from exposing Plaintiff's members and the public to illegal amounts of harmful air pollution.  Save Our County alleges that the Defendant has exceeded, and continues to exceed, state and federal emissions limits, thereby violating the Clean Air Act.  This suit is particularly concerned with the Defendant's exceedances of opacity limits and short-term emissions limits for sulfur dioxide

("SO$_2$") and nitrogen oxides ("NO$_x$") at its hazardous waste incinerator located in East Liverpool, Ohio (the "Incinerator").

2. Save Our County brings this lawsuit under the citizen enforcement provision of the Clean Air Act, 42 U.S.C. § 7401, *et seq.,* (the "CAA" or the "Act") and seeks declaratory and injunctive relief, the assessment of penalties, and an award of litigation costs and fees, to address Defendant's violations of its permit and requirements under Title V of the Act and the state implementation plan adopted by the State of Ohio and approved by the EPA ("Ohio SIP"), pursuant to section 110 of the Act, 42 U.S.C. § 7410.

3. Defendant has operated and continues to operate its hazardous waste incinerator in East Liverpool, Ohio in violation of the Act. Specifically:

a. Heritage has violated and continues to violate the short-term emissions limits for SO$_2$ contained in the facility's Title V Operating Permit;

b. Heritage has violated and continues to violate the short-term emissions limits for NO$_x$ contained in the facility's Title V Operating Permit;

c. Heritage has violated and continues to violate opacity limits contained in the federally-approved Ohio SIP and the facility's Title V Operating Permit; and,

d. Heritage has violated the reporting requirements for short-term emissions exceedances of SO$_2$ and NO$_x$ contained in the facility's Title V Operating Permit.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 42 U.S.C. § 7404(a) (The Clean Air Act). An actual, justiciable controversy exists between the Plaintiff and Defendant.

5.     This Court may issue the relief requested, including a declaratory judgment and further necessary or proper relief pursuant to 42 U.S.C. § 7604 and 28 U.S.C. §§ 2201-2202.

6.     Consistent with the citizen enforcement provision of the CAA, prior to the commencement of this lawsuit, Save Our County gave notice of the violations alleged in this Complaint and its intent to file suit on November 4, 2015, to Heritage and all other required parties. A copy of this notice letter is attached as Exhibit 1 and incorporated herein.

7.     More than sixty (60) days have passed since Save Our County gave notice of the violations alleged in this complaint and its intent to file suit. The violations complained of have not ceased, and new additional violations have come to light.

8.     Venue is proper in this judicial district because a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred in this judicial district. 28 U.S.C. § 1391(b)(2). The violations giving rise to the Plaintiff's claims occurred at Heritage's hazardous waste incinerator located in Columbiana County, Ohio.

9.     Venue is proper in this judicial district, because the source of the violations is located there. 42 U.S.C. § 7604(c)(1).

**PARTIES**

10.    Plaintiff Save Our County, Inc. is an Ohio nonprofit corporation based in East Liverpool, Ohio. Save Our County formed for the specific purpose of opposing the installation and operation of the hazardous waste incinerator in East Liverpool that is now owned and operated by Heritage. Save Our County is dedicated to environmental justice and the public health and environmental safety of the East Liverpool community, including the reduction or elimination of air pollution occurring at the hazardous waste incinerator at issue in this Complaint.

11.     Save Our County has members who live, work, and recreate in and around East Liverpool, Ohio, and who breathe in or are otherwise exposed to the harmful pollutants emitted by Heritage's hazardous waste incinerator. The harmful or adverse effects of such pollutants include actual or threatened harm to Save Our County's members' health, their professional and economic interests, and their aesthetic and recreational enjoyment of the East Liverpool community.

12.     Defendant, Heritage Thermal Services, Inc., formerly known as Heritage-WTI, Inc., is a privately held Delaware corporation and subsidiary of Heritage Environmental Services, LLC, with its principal place of business in East Liverpool, Ohio.  Heritage thermally incinerates hazardous and non-hazardous wastes and other materials generated by various entities in the chemical, petroleum, manufacturing, steel, oil and gas exploration, aviation, and universities industries.

13.     Heritage is the owner and operator of a hazardous waste incinerator in East Liverpool Ohio, referred to in this Amended Complaint as the "Incinerator." The Incinerator is located on the bank of the Ohio river, approximately 320 feet from a low income, minority neighborhood at the following address: 1250 St. George Street, East Liverpool, Ohio 43920.  The Incinerator incinerates hazardous waste by thermal oxidation in a rotary kiln-based incineration system.  The Incinerator is a major source of air emissions operating under a state-issued Title V Permit, and, according to its latest Title V permit renewal application, has the potential to emit, among other pollutants, up to 138.94 tons per year of $NO_x$, 49.76 tons per year of $SO_2$, and 106.78 tons per year of carbon monoxide.

14.     Members of Save Our County live, work, and recreate in the areas affected by the Incinerator's unlawful emissions. The CAA violations alleged in this Complaint have injured and

continue to injure the environmental, recreational, aesthetic, economic, and health-related interests of Save Our County and its members. Save Our County's members have suffered and will continue to suffer the direct, indirect, and cumulative negative health and environmental impacts that result from the Defendant's excessive and illegal emissions of pollutants into East Liverpool's air.

15.     Save Our County member Sandra Estell has lived in East Liverpool, Ohio her entire life. Ms. Estell has been a member of Save Our County since approximately 1990. Ms. Estell lives approximately 800 feet from Heritage's hazardous waste Incinerator, and her home sits approximately 75 feet above the Incinerator's stack. Ms. Estell has specific personal, health, environmental, and aesthetic interests in the quality of the air surrounding the Incinerator. Ms. Estell's full declaration of interest and support is attached as Exhibit 2.

16.     Without redress for the harmful activities and the violations of the CAA and the Ohio SIP described in this Complaint, Save Our County and its members will continue to suffer injuries. Providing the relief requested in this Complaint will redress those injuries by compelling Heritage to immediately reduce air pollution caused by the Incinerator and to properly report future emissions, thereby allowing for better enforcement of future violations.

**STATUTORY AND REGULATORY BACKGROUND**

17.     A primary purpose of the CAA is "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1).

18.     The CAA requires the US EPA to establish two sets of standards to accomplish those goals: national ambient air quality standards ("NAAQS") and the use of specific emission control technologies to limit the emission of certain pollutants. 42 U.S.C. §§ 7408(a)(1)(A),

7409(b). NAAQS must protect public health and welfare with an "adequate margin of safety." 42 U.S.C. § 7409(b). The US EPA has established NAAQS for six pollutions known as "criteria pollutants": carbon monoxide, lead, nitrogen dioxide, ozone, particulate matter, and sulfur dioxide. 40 C.F.R. Part 50.

19.    Once the US EPA sets those standards, states bear primary responsibility under the CAA for regulating sources of air pollution and attaining ambient air quality standards. *See e.g.*, 42 U.S.C. §§ 7401(a)(3)  (state responsibility) & 7410 (state implementation plans).

20.    The CAA allows each state to implement many of the regulatory requirements of the CAA by submitting a state implementation plan ("SIP") to the US EPA for approval. 42 U.S.C. § 7410(a). US EPA may not approve SIP provisions that do not satisfy the requirements of the CAA. 42 U.S.C. § 7410(k).

21.    Once approved by the US EPA, SIPs become federally enforceable by US EPA, the state, and citizens.

22.    Each section of the Ohio Administrative Code ("OAC") that is referred to in this Complaint is incorporated into Ohio's approved SIP at 40 C.F.R. Part 52, Subpart KK, making each OAC section referenced herein federally enforceable under the citizen enforcement provision of the CAA.

*Title V Operating Permit Program*

23.    To help achieve the Act's goals of enhancing the quality of the Nation's air resources, the 1990 amendments to the CAA created the Title V permit program, which applies to all major sources of air pollution. *See* 42. U.S.C. §§ 7661-7661f.  Pursuant to 42 U.S.C. § 7661(2), a major source is defined as any stationary source that emits or has the potential to emit ten tons per year ("TPY") of any hazardous air pollutant ("HAPs"), twenty-five TPY of any combinations of

hazardous air pollutants, or one hundred TPY or more of any air pollutant, including VOCs. 42 U.S.C.§ 7412(a)(1); 42 U.S.C. § 7602(j); 40 C.F.R. § 70.2; *see also* OAC Rule 3745-77-01(X)(1)(a) & (b).

24.     A principal purpose of the Title V program is to combine all air emissions requirements into a single document and to create mechanisms for tracking compliance with those requirements. *See* 42 U.S.C. 7661c(a)-(c); 40 C.F.R. § 70.1(b). This enhances the source's ability to comply with applicable air emissions requirements and the State's and public's ability to monitor a facility's compliance with its air emissions requirements. Overall, increased source accountability and better enforcement result from compliance with the Title V program.

25.     Pursuant to Section 502(b) of the Act, 42 U.S.C. § 7661a(b), US EPA promulgated regulations implementing the requirements of Title V and establishing the minimum elements of a permit program to be administered by any state or local agency. 57 Fed. Reg. 32250 (July 21, 1992). These regulations are codified at 40 C.F.R. Part 70.

26.     The Ohio EPA, by and through Ohio's federally approved SIP, administers the Title V program in Ohio. Ohio's Title V rules are found at OAC Rule 3745-77-01 through OAC Rule 3745-77-10.

*Citizen Enforcement Under the CAA*

27.     The citizen suit provision of the CAA, 42 U.S.C. § 7604, authorizes "any person" to commence a civil action against "any person" who is alleged to be in violation of any "emissions standard or limitation" under the CAA, including any requirement in any federally approved SIP or a condition or requirement of a Title V Air Permit.

28.     "Emission standard or limitation" is defined as, among other things, "any standard, limitation, or schedule established under any permit issued pursuant to subchapter V of this

chapter or under any applicable State implementation plan approved by the Administrator, any permit term or condition, and any requirement to obtain a permit as a condition of operations." 42 U.S.C. § 7604(f)(4).

29.     42 U.S.C. § 7602(e) of the CAA defines the term "person" as an individual, corporation, partnership, association, State, municipality, political subdivision of a State, and any agency, department, or instrumentality of the United States and any officer, agency, or employee thereof.

30.     The Plaintiff is a "person" within the meaning of 42 U.S.C. § 7602(e) and 42 U.S.C. § 7604(a).

31.     The Defendant is a "person" within the meaning of 42 U.S.C. § 7602(e) and 42 U.S.C. § 7604(a).

## FACTUAL BACKGROUND

### *Siting of the Incinerator*

32.     Despite opposition from the Plaintiff, community members, and other organizations, the hazardous waste Incinerator at issue in this Complaint was sited on the bank of the Ohio River, near a public water supply, and atop a floodplain.

33.     At the time of its siting and construction, the Incinerator was only 300 feet from neighborhood homes and just 1,100 feet from an elementary school. Many of those homes are now vacant, and the elementary school has since been shut down.

34.     The top of the Incinerator's stack sits at approximately the same elevation as the elevation of the closest neighborhood.

35.    The height of the stack and the close proximity of the Incinerator to the surrounding community, the Ohio River, and a public water supply make strict control of pollutants from the Incinerator vital to the protection of human health and the environment.

36.    East Liverpool is an economically depressed community of approximately 11,000 people. Upon information and belief, the majority of the city's minority residents live in the immediate vicinity of the Incinerator.

37.    A large portion of East Liverpool's population is made up of children and elderly individuals. These two groups are especially susceptible to health risks created by air pollutants.

*Heritage's Title V Air Permit*

38.    Heritage's Title V permit was renewed on December 22, 2008, with an effective date of January 12, 2009, and an expiration date of January 12, 2014. The permit is currently administratively extended while the Ohio EPA reviews Heritage's timely submitted renewal application. The Title V permit is attached as Exhibit 3 and incorporated herein.

39.    The Title V permit contains short-term emissions limitations for sulfur dioxide ("$SO_2$") and nitrogen oxides ("$NO_x$") that were established by the Ohio EPA as Best Available Technology ("BAT") pursuant to OAC Rule 3745-31-05(A)(3). The short-term emissions limitations for $SO_2$ and $NO_x$ contained in the Title V permit require continuous compliance. Pursuant to these limitations, $SO_2$ emissions from the Incinerator must not exceed 11.34 lbs per hour and $NO_x$ emissions must not exceed 28.36 lbs per hour.

40.    Pursuant to its Title V permit and Ohio's federally-approved SIP at OAC Rule 3745-17-07(A)(1)(a), Heritage is also required to ensure particulate matter emissions from the Incinerator do not exceed 20% opacity, measured as a 6-minute average.  The Title V permit and OAC Rule 3745-17-07(A)(2) and (3) provide certain exemptions to Heritage's opacity limits,

including exemptions for startup, shut down, and malfunctions. Exhibit 3, Final Air Pollution Control Title V Permit, Facility ID: 0215020233, at 48 of 108.

41.    Pursuant to its Title V permit, Heritage is required to submit quarterly Excess Emissions Reports ("Quarterly Reports") that identify, among other things, the times of excess short-term emissions of $SO_2$ and $NO_x$, as well as the times of exceedances of the opacity limits. Quarterly Reports must report excess emissions "in units of the applicable standards." Heritage's Quarterly Reports list readings above the limits of 11.34 lbs of $SO_2$ per hour and 28.36 lbs of $NO_x$ per hour and include Continuous Opacity Monitoring readings above 20% opacity, measured as a 6-minute average. Exhibit 3, Final Air Pollution Control Title V Permit, Facility ID: 0215020233, at 62 of 108.

42.    Heritage's Title V permit requires maintenance of continuous emissions monitoring systems records. Pursuant to Heritage's Title V permit, emissions records must be kept using the appropriate averaging period, which the permit specifies as hourly for short-term $SO_2$ and $NO_x$ emissions and 6-minute averages for opacity. *See* Exhibit 3, Final Air Pollution Control Title V Permit, Facility ID: 0215020233, at 48 of 108.

*Operation of the Hazardous Waste Incinerator*

43.    Over the history of the Incinerator's operation, Heritage has been a habitual violator of the CAA, the Ohio Air Pollution Control Act, and its Title V permit.

44.    In 2000, the Ombudsman for the US EPA found that there were significant problems with Heritage's monitoring data affecting both the facility's trial burn and its risk assessment, and as a result found that the potential health risks to the community were not being adequately addressed. The Ombudsman recommended that the Incinerator be shut down for a period of at least six months in order to conduct a new trial burn. This recommendation was never followed.

45. The U.S. EPA has listed Heritage as a High Priority Violator for the last eleven quarters through March of 2016.

46. Despite numerous citations for past violations of its permitted emissions and operating standards, Heritage has continued to fail to comply with its short-term emissions limitations for $SO_2$, $NO_x$, and THC, as well as its opacity limitations. These past Notices of Violations ("NOVs") include, but are not limited to:

    a. On November 16, 2009, Ohio EPA issued Heritage a NOV for $SO_2$ exceedances for the third quarter (July 1–September 30) of 2009. Exhibit 4, Ohio EPA Notice of Violation, dated November 16, 2009.

    b. On June 14, 2010, based on the 2010 first quarter (January 1-March 31) Excess Emissions Report, Ohio EPA issued Heritage a NOV for exceedances of short-term emissions limitations for $SO_2$, $NO_x$, and total hydrocarbons (THC). Exhibit 5, Ohio EPA Notice of Violation, dated June 14, 2010.

    c. On April 19, 2010, Ohio EPA issued Heritage a NOV for exceedances of $SO_2$, $NO_x$, THC, carbon monoxide (CO), hydrochloric acid (HCl), and opacity limitations. Exhibit 6, Ohio EPA Notice of Violation, dated April 19, 2010.

    d. On February 15, 2011, based on the 2010 fourth quarter (October 1–December 31) Excess Emissions Report, Ohio EPA issued Heritage a NOV for exceedances of short-term limitations for $NO_x$ and THC. Exhibit 7, Ohio EPA Notice of Violations, dated February 15, 2011.

    e. On June 3, 2011, based on the 2011 first quarter Excess Emissions Reports, Ohio EPA issued Heritage a NOV for exceedances of short-term limitations for $NO_x$,

SO$_2$, THC, and opacity limitations. Exhibit 8, Ohio EPA Notice of Violation, dated June 3, 2011.

47. In July of 2013, a horrible explosion occurred at the facility that resulted in the release of an ash cloud that covered roughly 80 acres of the surrounding community ("the ash incident"). The community received notices from the facility telling residents to not eat any homegrown vegetables and to drain their pools. On August 5, 2013, the Ohio EPA issued a Notice of Violation to Heritage, determining that the ash release of July 13, 2013, caused a public nuisance in violation of OAC Rule 3745-15-07. The Notice required Heritage to report the methodology in determining that 761 lbs of ash were released, and to submit a plan that outlines how Heritage will ensure that a similar incident won't happen again. Exhibit 9, Ohio EPA Notice of Violation, dated August 5, 2013.

48. Currently, US EPA is in talks with Heritage about the ash incident and its root causes. On March 23, 2015, the U.S. EPA issued a Finding of Violation ("FOV") that detailed violations of 14 different standards and limitations required by Heritage's Title V permit and the CAA regulations. Among the violations noted were repeated and continuous THC emission rate exceedances dating back to November of 2010. Exhibit 10, US EPA Finding of Violation, dated March 23, 2015.

*Reporting of Excess Emissions from the Incinerator*

49. Heritage's Title V permit requires Heritage to submit Quarterly Excess Emission Reports that identify, among other things, any emissions that exceed the permit's NO$_x$, SO$_2$, and THC established limitations.

50. For each listed deviation, there must be an explanation as to why it occurred. For Maximum Achievable Control Technology  (MACT) limits, such as THC or Kiln Temperature,

if the explanation qualifies as a startup, shutdown, or malfunction pursuant to 40 CFR § 63.1206(b)(1), it is not considered a violation. The $SO_2$ and $NO_x$ limits are established as BAT limits in the permit-to-install and the Title V permit, and require continuous compliance in order to avoid violations.

51.    Heritage's Title V permit states "[s]ulfur dioxide emissions from the stack shall not exceed 11.34 pounds per hour," and "[n]itrogen oxides emissions from the stack shall not exceed 28.36 pounds per hour." Exhibit 3, Final Air Pollution Control Title V Permit, Facility ID: 0215020233, at 48 of 108.

52.    Heritage's Title V permit requires that "[e]xcess emissions shall be reported in units of the applicable standard(s)." Exhibit 3, Final Air Pollution Control Title V Permit, Facility ID: 0215020233, at 62 of 108. As described above, the hour is the unit of the standard for short-term $NO_x$ and $SO_2$ emissions limits.

53.    Prior to its 2014 Fourth Quarter Excess Emission Report, Heritage reported excess $NO_x$ and $SO_2$ emissions using a rolling 1-hour average, as required by their Title V permit. The Second Quarter 2011 through Third Quarter 2012 Excess Emissions Reports are attached as Exhibit 11 and incorporated herein. The Fourth Quarter 2012 through First Quarter 213 Excess Emissions Reports are attached as Exhibit 12 and incorporated herein. The Second Quarter 2013 through Third Quarter 2014 Excess Emissions Reports are attached as Exhibit 13 and incorporated herein.

54.    Upon information and belief, in April of 2010, after notifying Heritage of multiple violations of short-term limitations for $SO_2$ and $NO_x$ contained in its permit, Ohio EPA requested that Heritage provide a comprehensive plan for reducing excess emissions of $NO_x$ and $SO_2$.

55.     In response to Ohio EPA's request for a comprehensive plan to reduce excess emissions of $NO_x$ and $SO_2$, Heritage requested a relaxation of its reporting requirements to allow $NO_x$ and $SO_2$ emissions to be reported using a greater averaging time instead of the hourly average required by the Title V permit. Heritage proposed that a longer averaging period be used with the current values collected by the continuous emissions monitoring system in order to smooth spikes in emissions caused by sudden feed irregularities and combustion upsets that cause $NO_x$ and $SO_2$ emissions to exceed the permitted hourly limits. Heritage recommended the averaging period be no less than 3 hours and no greater than 24 hours.  Heritage suggested that by relaxing the reporting requirements and implementing a longer averaging time, it could bring the Incinerator's $NO_x$ and $SO_2$ emissions into compliance. Ohio EPA did not grant Heritage's request at that time.

56.     Pursuant to OAC Rule 3745-77-08, the modification of a Title V permit demands significant procedural undertaking.  A significant permit modification requires the completion of a public participation process, including a notice and comment period.  OAC Rule 3745-77-08(G).  Even minor modifications require a specific application process under OAC Rule 3745-77-08(C)(1) and OAC Rule 3745-77-09.

57.     Minor permit modifications may be used only for permit modifications that "do not violate any applicable requirement" and "do not involve significant changes to existing monitoring, reporting, or recordkeeping requirements in the permit," and that "are not modifications under any provision of Title I of the Act." OAC Rule 3745-77-08(C)(1)(a).

58.     Pursuant to OAC Rule 3745-77-08, all permit modifications that do not qualify as minor permit modifications or administrative permit amendments, must go through significant modification procedures.  OAC Rule 3745-77-01 defines an "administrative permit amendment"

as a revision that corrects typographical errors; identifies a change in name, address, or phone number of any person identified in the permit; requires more frequent monitoring or reporting by the permittee; allows for certain changes in ownership of the permittee; or in certain cases incorporates into the Title V permit the federally enforceable requirements in a permit-to-install.

59. In August of 2014, Heritage again requested that Ohio EPA relax its Title V reporting requirements by allowing Heritage to implement a 3-hour averaging period and to avoid reporting exceedances of the limits for $SO_2$ and $NO_x$ contained in its Title V permit.

60. In December of 2014, Ohio EPA issued a letter authorizing Heritage to begin using a 3-hour block averaging period for reporting excess $SO_2$ and $NO_x$ emissions in its Quarterly Reports.

61. Beginning with its 2014 Fourth Quarter Excess Emission Report, Heritage has reported $NO_x$ and $SO_2$ emissions using a 3-hour block averaging period. The Fourth Quarter 2014 through Third Quarter 2015 Excess Emissions Reports are attached as Exhibit 14 and incorporated herein.

62. Upon information and belief, implementation of a 3-hour block averaging period allows Heritage to hide hourly exceedances that would otherwise be reported under the rolling hourly average standard. This type of modification to Heritage's conditions of operation, and the effects thereof, require significant permit modification procedures, or, at the very least, minor modification procedures.

63. Upon information and belief, Heritage did not go through the required permit modification procedures before implementing the 3-hour block averaging standards. Therefore, Heritage was not properly authorized to average emissions and report exceedances of $SO_2$ and $NO_x$ using a 3-hour block averaging period, and Heritage has been failing to report or improperly

reporting exceedances beginning with the 2014 Fourth Quarter Excess Emission Report and continuing through the present.

64. Even under the modified 3-hour block averaging and reporting standard, Ohio EPA issued Heritage a Notice of Violation on January 28, 2015, for excess $NO_x$ emissions from the Incinerator pursuant to the second quarter 2015 Excess Emission Report. Exhibit 15, Ohio EPA Notice of Violation, dated January 21, 2016.

*No Action Taken by the State of Ohio or the US EPA Statutorily Precludes this Citizen Suit*

65. The CAA provides that a citizen suit claim brought under Section 304 will only be barred "if the Administrator or a State has commenced and is diligently prosecuting a civil action…to require compliance with the standard, limitation, or order [that the plaintiff in the citizen suit alleges was violated]." 42 U.S.C. § 7604(b)(1)(B).

66. Neither the State of Ohio nor the US EPA has commenced a civil action to address the violations described in this Complaint.

67. While the US EPA is in talks with Heritage regarding the July 2013 ash incident, neither the Ohio EPA nor the US EPA has sought, nor are they currently seeking, penalties or formal injunctive relief for Heritage's repeated and continued $SO_2$, $NO_x$, and opacity violations, which have occurred continuously and in addition to the ash release.

*Consequences of the Defendant's Unlawful Actions*

68. The Incinerator's emissions are endangering the health, safety, and welfare of the public and the environment, including the Plaintiff and its members.

69. Heritage's failure to report emissions of $NO_x$ and $SO_2$ on an hourly rolling average as required by its Title V permit is preventing accurate measurement of compliance and subsequent enforcement of emissions standards.

70.     Opacity is an indicator of excessive particulate matter ("PM") pollution being emitted from the Incinerator's stack.  According to the United States Environmental Protection Agency ("US EPA"), once inhaled, PM can adversely affect the pulmonary and respiratory systems, causing serious health problems, including lung damage and premature death.  Numerous studies have linked PM inhalation to difficulty breathing, decreased lung function, aggravated asthma, irregular heartbeat, the development of chronic bronchitis, persistent coughing and respiratory irritation, heart attacks, and premature death in people with heart or lung disease.  In addition, PM can travel over long distances and settle on the ground or water where it can cause environmental and economic harm by depleting nutrients in soil; acidifying lakes and streams; causing nutrient imbalances in aquatic systems; and damaging sensitive plants, agricultural crops, and forests.

71.     Excessive $SO_2$ emissions can have significant human health impacts. Long term exposure to high levels of $SO_2$ gas and sulfate particles can cause respiratory illness, aggravate existing heart disease, and lead to premature death. $SO_2$ emissions are a medically recognized threat to human health, and high levels of pollution sustained for periods of days can kill.  $SO_2$ is also one of the principal pollutants to cause acid precipitation, which can cause environmental and property damage, in addition to human health problems.

72.     Excess $NO_x$ in the ambient air can cause serious human health problems, including respiratory inflammation, difficulty breathing, and lung damage. $NO_x$ pollution contributes to ground level ozone, which when inhaled can cause shortness of breath and pain when breathing, increase the frequency of asthma attacks, make lungs more susceptible to infection, damage airways, and increase the risk of premature death from heart or lung disease.  According to the EPA, children are at the greatest risk from exposure to ozone because of their developing lungs

and tendency to be active outdoors during times of day when ozone levels are highest. In addition to $SO_2$, $NO_x$ is the principal pollutant that causes acid precipitation, which can cause serious environmental and property damage.

## VIOLATIONS OF THE CLEAN AIR ACT AND THE OHIO AIR POLLUTION CONTROL ACT

### COUNT ONE
*Violations of Short-Term Limitations for $NO_x$ Emissions*

73.    Plaintiff realleges and incorporates by reference herein all above allegations and aforementioned exhibits.

74.    Heritage's Title V permit requires that $NO_x$ emissions from the Incinerator's stack not exceed 28.36 pounds per hour and requires continuous compliance.

75.    Heritage violated the $NO_x$ limitation requirement on at least 174 occasions between April of 2011 and the present.  These violations include, at least, the violations listed in the table below:

**$NO_x$ Emissions Exceedances**

| Date | Time | Duration (min.) | Violation Type | Reading (Max.) | Max. Limit |
|------|------|-----------------|----------------|----------------|------------|
| 4/1/11 | 18:30 | 56 | NOX (lb/hr) | 34.00 | 28.36 |
| 4/9/11 | 2:54 | 4 | NOX (lb/hr) | 34.00 | 28.36 |
| 4/9/11 | 15:12 | 11 | NOX (lb/hr) | 28.70 | 28.36 |
| 4/10/11 | 1:56 | 10 | NOX (lb/hr) | 28.50 | 28.36 |
| 4/11/11 | 21:10 | 92 | NOX (lb/hr) | 33.90 | 28.36 |
| 4/11/11 | 22:50 | 39 | NOX (lb/hr) | 30.20 | 28.36 |
| 4/27/11 | 19:56 | 6 | NOX (lb/hr) | 29.00 | 28.36 |
| 5/5/11 | 22:39 | 51 | NOX (lb/hr) | 30.70 | 28.36 |
| 5/6/11 | 0:45 | 16 | NOX (lb/hr) | 29.50 | 28.36 |
| 5/6/11 | 1:07 | 32 | NOX (lb/hr) | 29.80 | 28.36 |
| 5/6/11 | 5:30 | 49 | NOX (lb/hr) | 34.70 | 28.36 |
| 5/9/11 | 20:48 | 60 | NOX (lb/hr) | 33.50 | 28.36 |

| | | | | | |
|---|---|---|---|---|---|
| 6/8/11 | 12:13 | 48 | NOX (lb/hr) | 36.00 | 28.36 |
| 6/15/11 | 16:20 | 8 | NOX (lb/hr) | 28.80 | 28.36 |
| 6/16/11 | 22:59 | 65 | NOX (lb/hr) | 31.80 | 28.36 |
| 6/24/11 | 22:30 | 19 | NOX (lb/hr) | 28.90 | 28.36 |
| 7/20/11 | 5:39 | 2 | NOX (lb/hr) | 28.80 | 28.36 |
| 7/20/11 | 5:42 | 1 | NOX (lb/hr) | 28.50 | 28.36 |
| 7/25/11 | 4:26 | 6 | NOX (lb/hr) | 28.50 | 28.36 |
| 8/30/11 | 1:42 | 38 | NOX (lb/hr) | 34.50 | 28.36 |
| 8/31/11 | 18:30 | 5 | NOX (lb/hr) | 28.90 | 28.36 |
| 9/3/11 | 0:56 | 33 | NOX (lb/hr) | 29.10 | 28.36 |
| 9/3/11 | 5:27 | 19 | NOX (lb/hr) | 29.10 | 28.36 |
| 9/8/11 | 5:24 | 7 | NOX (lb/hr) | 29.10 | 28.36 |
| 9/8/11 | 23:02 | 5 | NOX (lb/hr) | 29.10 | 28.36 |
| 9/8/11 | 23:26 | 10 | NOX (lb/hr) | 30.30 | 28.36 |
| 10/4/11 | 19:05 | 139 | NOX (lb/hr) | 34.10 | 28.36 |
| 10/17/11 | 7:49 | 26 | NOX (lb/hr) | 31.90 | 28.36 |
| 10/23/11 | 12:31 | 17 | NOX (lb/hr) | 29.70 | 28.36 |
| 10/23/11 | 14:13 | 9 | NOX (lb/hr) | 30.10 | 28.36 |
| 11/2/11 | 16:57 | 7 | NOX (lb/hr) | 28.60 | 28.36 |
| 11/29/11 | 1:19 | 23 | NOX (lb/hr) | 30.10 | 28.36 |
| 11/29/11 | 20:48 | 7 | NOX (lb/hr) | 28.60 | 28.36 |
| 11/29/11 | 21:03 | 3 | NOX (lb/hr) | 28.40 | 28.36 |
| 12/1/11 | 12:39 | 26 | NOX (lb/hr) | 31.30 | 28.36 |
| 12/28/11 | 22:58 | 17 | NOX (lb/hr) | 28.60 | 28.36 |
| 1/14/12 | 8:57 | 172 | NOX (lb/hr) | 42.80 | 28.36 |
| 1/14/12 | 12:45 | 349 | NOX (lb/hr) | 44.20 | 28.36 |
| 2/10/12 | 5:36 | 18 | NOX (lb/hr) | 30.10 | 28.36 |
| 2/12/12 | 12:23 | 116 | NOX (lb/hr) | 33.80 | 28.36 |
| 2/20/12 | 23:10 | 9 | NOX (lb/hr) | 29.00 | 28.36 |
| 2/23/12 | 10:16 | 13 | NOX (lb/hr) | 28.60 | 28.36 |
| 3/4/12 | 19:00 | 19 | NOX (lb/hr) | 29.10 | 28.36 |
| 3/4/12 | 19:22 | 4 | NOX (lb/hr) | 28.50 | 28.36 |
| 3/6/12 | 7:21 | 8 | NOX (lb/hr) | 30.20 | 28.36 |
| 3/11/12 | 13:21 | 1 | NOX (lb/hr) | 28.40 | 28.36 |
| 3/13/12 | 9:17 | 3 | NOX (lb/hr) | 28.50 | 28.36 |
| 3/13/12 | 9:27 | 9 | NOX (lb/hr) | 28.70 | 28.36 |
| 3/16/16 | 22:22 | 27 | NOX (lb/hr) | 30.00 | 28.36 |
| 3/22/12 | 17:24 | 3 | NOX (lb/hr) | 28.50 | 28.36 |
| 3/22/12 | 21:54 | 60 | NOX (lb/hr) | 32.10 | 28.36 |
| 3/25/12 | 6:49 | 3 | NOX (lb/hr) | 28.50 | 28.36 |
| 4/4/12 | 2:54 | 5 | NOX (lb/hr) | 28.50 | 28.36 |
| 4/11/12 | 7:09 | 7 | NOX (lb/hr) | 28.70 | 28.36 |
| 4/17/12 | 19:50 | 30 | NOX (lb/hr) | 30.10 | 28.36 |

| | | | | | |
|---|---|---|---|---|---|
| 4/28/12 | 10:13 | 29 | NOX (lb/hr) | 29.60 | 28.36 |
| 4/28/12 | 11:13 | 55 | NOX (lb/hr) | 32.20 | 28.36 |
| 4/28/12 | 13:05 | 15 | NOX (lb/hr) | 28.80 | 28.36 |
| 4/29/12 | 1:15 | 30 | NOX (lb/hr) | 31.30 | 28.36 |
| 4/29/12 | 1:56 | 17 | NOX (lb/hr) | 30.30 | 28.36 |
| 4/29/12 | 8:57 | 57 | NOX (lb/hr) | 36.30 | 28.36 |
| 4/29/12 | 14:13 | 41 | NOX (lb/hr) | 30.20 | 28.36 |
| 4/29/12 | 20:38 | 11 | NOX (lb/hr) | 29.50 | 28.36 |
| 4/30/12 | 15:48 | 32 | NOX (lb/hr) | 32.10 | 28.36 |
| 4/30/12 | 21:35 | 23 | NOX (lb/hr) | 29.40 | 28.36 |
| 5/1/12 | 6:25 | 22 | NOX (lb/hr) | 30.20 | 28.36 |
| 5/1/12 | 7:56 | 59 | NOX (lb/hr) | 35.50 | 28.36 |
| 5/1/12 | 12:26 | 85 | NOX (lb/hr) | 31.30 | 28.36 |
| 5/1/12 | 14:02 | 5 | NOX (lb/hr) | 28.50 | 28.36 |
| 5/1/12 | 17:38 | 50 | NOX (lb/hr) | 31.40 | 28.36 |
| 5/1/12 | 22:46 | 24 | NOX (lb/hr) | 29.30 | 28.36 |
| 5/2/12 | 6:15 | 58 | NOX (lb/hr) | 31.80 | 28.36 |
| 5/2/12 | 19:56 | 2 | NOX (lb/hr) | 28.40 | 28.36 |
| 5/2/12 | 23:38 | 8 | NOX (lb/hr) | 28.60 | 28.36 |
| 5/3/12 | 3:23 | 59 | NOX (lb/hr) | 32.90 | 28.36 |
| 5/3/12 | 8:17 | 17 | NOX (lb/hr) | 29.70 | 28.36 |
| 5/5/12 | 17:56 | 8 | NOX (lb/hr) | 28.70 | 28.36 |
| 5/6/12 | 7:16 | 33 | NOX (lb/hr) | 32.40 | 28.36 |
| 5/6/12 | 18:15 | 23 | NOX (lb/hr) | 29.20 | 28.36 |
| 5/7/12 | 4:34 | 18 | NOX (lb/hr) | 30.90 | 28.36 |
| 5/8/12 | 10:09 | 134 | NOX (lb/hr) | 38.30 | 28.36 |
| 5/8/12 | 13:24 | 30 | NOX (lb/hr) | 30.30 | 28.36 |
| 5/8/12 | 16:19 | 121 | NOX (lb/hr) | 34.00 | 28.36 |
| 5/9/12 | 9:02 | 21 | NOX (lb/hr) | 30.00 | 28.36 |
| 5/11/12 | 22:10 | 45 | NOX (lb/hr) | 31.30 | 28.36 |
| 5/12/12 | 4:37 | 37 | NOX (lb/hr) | 29.90 | 28.36 |
| 5/14/12 | 2:12 | 43 | NOX (lb/hr) | 30.00 | 28.36 |
| 5/14/12 | 7:14 | 6 | NOX (lb/hr) | 28.80 | 28.36 |
| 5/14/12 | 21:40 | 13 | NOX (lb/hr) | 29.40 | 28.36 |
| 5/18/12 | 7:05 | 7 | NOX (lb/hr) | 29.10 | 28.36 |
| 5/22/12 | 22:45 | 11 | NOX (lb/hr) | 29.10 | 28.36 |
| 5/25/12 | 7:37 | 29 | NOX (lb/hr) | 29.00 | 28.36 |
| 5/25/12 | 17:27 | 16 | NOX (lb/hr) | 29.10 | 28.36 |
| 5/26/12 | 1:57 | 57 | NOX (lb/hr) | 34.40 | 28.36 |
| 5/26/12 | 21:53 | 72 | NOX (lb/hr) | 37.00 | 28.36 |
| 5/28/12 | 15:46 | 10 | NOX (lb/hr) | 29.20 | 28.36 |
| 5/28/12 | 16:24 | 14 | NOX (lb/hr) | 31.90 | 28.36 |
| 5/29/12 | 3:46 | 42 | NOX (lb/hr) | 29.70 | 28.36 |

| | | | | | |
|---|---|---|---|---|---|
| 5/29/12 | 11:43 | 10 | NOX (lb/hr) | 29.30 | 28.36 |
| 5/29/12 | 17:10 | 44 | NOX (lb/hr) | 32.20 | 28.36 |
| 5/30/12 | 9:45 | 24 | NOX (lb/hr) | 29.50 | 28.36 |
| 5/30/12 | 12:15 | 32 | NOX (lb/hr) | 30.40 | 28.36 |
| 6/2/12 | 7:56 | 92 | NOX (lb/hr) | 36.10 | 28.36 |
| 6/2/12 | 20:47 | 82 | NOX (lb/hr) | 39.80 | 28.36 |
| 6/3/12 | 0:04 | 53 | NOX (lb/hr) | 32.30 | 28.36 |
| 6/3/12 | 12:03 | 1 | NOX (lb/hr) | 28.40 | 28.36 |
| 6/4/12 | 0:14 | 13 | NOX (lb/hr) | 29.30 | 28.36 |
| 6/4/12 | 18:57 | 84 | NOX (lb/hr) | 35.70 | 28.36 |
| 6/5/12 | 15:41 | 48 | NOX (lb/hr) | 30.80 | 28.36 |
| 6/7/12 | 7:02 | 47 | NOX (lb/hr) | 32.20 | 28.36 |
| 6/9/12 | 0:33 | 36 | NOX (lb/hr) | 31.90 | 28.36 |
| 6/9/12 | 12:48 | 10 | NOX (lb/hr) | 28.50 | 28.36 |
| 6/10/12 | 3:55 | 15 | NOX (lb/hr) | 28.60 | 28.36 |
| 6/13/12 | 8:47 | 11 | NOX (lb/hr) | 29.00 | 28.36 |
| 6/17/12 | 6:47 | 23 | NOX (lb/hr) | 32.00 | 28.36 |
| 6/21/12 | 17:42 | 19 | NOX (lb/hr) | 28.80 | 28.36 |
| 6/22/12 | 12:59 | 35 | NOX (lb/hr) | 29.90 | 28.36 |
| 6/25/12 | 6:00 | 8 | NOX (lb/hr) | 30.50 | 28.36 |
| 6/28/12 | 15:35 | 58 | NOX (lb/hr) | 31.10 | 28.36 |
| 7/1/12 | 13:32 | 9 | NOX (lb/hr) | 28.80 | 28.36 |
| 7/2/12 | 6:46 | 8 | NOX (lb/hr) | 28.60 | 28.36 |
| 8/30/12 | 14:44 | 49 | NOX (lb/hr) | 31.90 | 28.36 |
| 8/30/12 | 16:21 | 30 | NOX (lb/hr) | 31.40 | 28.36 |
| 11/2/12 | 0:18 | 503 | NOX (lb/hr) | 37.30 | 28.36 |
| 11/2/12 | 10:40 | 6 | NOX (lb/hr) | 28.50 | 28.36 |
| 11/5/12 | 7:30 | 59 | NOX (lb/hr) | 31.00 | 28.36 |
| 11/5/12 | 23:15 | 32 | NOX (lb/hr) | 30.40 | 28.36 |
| 11/23/12 | 14:28 | 5 | NOX (lb/hr) | 28.50 | 28.36 |
| 1/10/13 | 12:19 | 26 | NOX (lb/hr) | 29.20 | 28.36 |
| 1/22/13 | 17:18 | 66 | NOX (lb/hr) | 45.90 | 28.36 |
| 1/22/13 | 23:18 | 3 | NOX (lb/hr) | 28.50 | 28.36 |
| 1/23/13 | 9:07 | 32 | NOX (lb/hr) | 31.10 | 28.36 |
| 1/23/13 | 9:45 | 8 | NOX (lb/hr) | 29.60 | 28.36 |
| 1/31/13 | 12:50 | 5 | NOX (lb/hr) | 28.90 | 28.36 |
| 8/13/13 | 13:19 | 5 | NOX (lb/hr) | 28.80 | 28.36 |
| 10/14/13 | 6:00 | 12 | NOX (lb/hr) | 32.30 | 28.36 |
| 10/28/13 | 7:07 | 23 | NOX (lb/hr) | 30.40 | 28.36 |
| 10/28/13 | 15:00 | 60 | NOX (lb/hr) | 35.30 | 28.36 |
| 10/30/13 | 5:11 | 34 | NOX (lb/hr) | 30.30 | 28.36 |
| 1/6/14 | 11:08 | 8 | NOX (lb/hr) | 28.50 | 28.36 |
| 1/6/14 | 14:47 | 12 | NOX (lb/hr) | 28.60 | 28.36 |

| | | | | | |
|---|---|---|---|---|---|
| 1/22/14 | 2:39 | 25 | NOX (lb/hr) | 29.80 | 28.36 |
| 1/24/14 | 21:03 | 15 | NOX (lb/hr) | 29.20 | 28.36 |
| 2/6/14 | 18:36 | 29 | NOX (lb/hr) | 29.40 | 28.36 |
| 2/8/14 | 3:57 | 99 | NOX (lb/hr) | 30.30 | 28.36 |
| 2/9/14 | 22:16 | 16 | NOX (lb/hr) | 28.50 | 28.36 |
| 2/11/14 | 18:46 | 52 | NOX (lb/hr) | 29.40 | 28.36 |
| 2/19/14 | 16:59 | 26 | NOX (lb/hr) | 29.80 | 28.36 |
| 2/20/14 | 22:54 | 42 | NOX (lb/hr) | 30.50 | 28.36 |
| 2/22/14 | 5:04 | 43 | NOX (lb/hr) | 37.50 | 28.36 |
| 2/22/14 | 5:49 | 4 | NOX (lb/hr) | 28.50 | 28.36 |
| 2/22/14 | 14:55 | 15 | NOX (lb/hr) | 29.20 | 28.36 |
| 2/26/14 | 12:55 | 6 | NOX (lb/hr) | 28.70 | 28.36 |
| 2/27/14 | 7:00 | 8 | NOX (lb/hr) | 29.40 | 28.36 |
| 3/14/14 | 6:53 | 7 | NOX (lb/hr) | 28.80 | 28.36 |
| 3/16/14 | 12:58 | 8 | NOX (lb/hr) | 28.70 | 28.36 |
| 3/30/14 | 16:26 | 10 | NOX (lb/hr) | 28.70 | 28.36 |
| 4/3/14 | 10:37 | 3 | NOX (lb/hr) | 28.50 | 28.36 |
| 4/21/14 | 20:33 | 9 | NOX (lb/hr) | 28.50 | 28.36 |
| 4/22/14 | 22:51 | 63 | NOX (lb/hr) | 40.50 | 28.36 |
| 5/13/14 | 6:56 | 8 | NOX (lb/hr) | 35.40 | 28.36 |
| 5/20/14 | 13:24 | 18 | NOX (lb/hr) | 29.00 | 28.36 |
| 5/20/14 | 22:23 | 34 | NOX (lb/hr) | 30.40 | 28.36 |
| 6/1/14 | 5:27 | 12 | NOX (lb/hr) | 29.20 | 28.36 |
| 6/14/14 | 5:58 | 10 | NOX (lb/hr) | 28.80 | 28.36 |
| 6/22/14 | 10:50 | 15 | NOX (lb/hr) | 29.40 | 28.36 |
| 7/16/14 | 14:34 | 48 | NOX (lb/hr) | 30.80 | 28.36 |
| 7/16/14 | 18:10 | 11 | NOX (lb/hr) | 29.70 | 28.36 |
| 7/17/14 | 1:17 | 4 | NOX (lb/hr) | 28.50 | 28.36 |
| 7/25/14 | 3:06 | 57 | NOX (lb/hr) | 32.70 | 28.36 |
| 8/3/14 | 15:24 | 17 | NOX (lb/hr) | 29.20 | 28.36 |
| 8/14/14 | 5:14 | 21 | NOX (lb/hr) | 29.00 | 28.36 |
| 8/21/14 | 7:25 | 51 | NOX (lb/hr) | 36.00 | 28.36 |
| 6/28/15 | 8:39 | 141 | NOX (lb/hr 3hr block) | 30.80 | 28.36 |

76.     By failing to meet the requirements for short-term $NO_x$ emissions contained in its Title V permit, Heritage has failed to comply with the Clean Air Act and the Ohio Air Pollution Control Act.

77.     Upon information and belief, Heritage has committed additional exceedances and violations of its short-term $NO_x$ limit, but these violations are currently hidden from the public

because of Heritage's modified procedures to record and report excess emissions. Heritage is in the best position to know of these violations, and it is believed that these additional violations will be revealed in discovery.

78.     Under 42 U.S.C. §§ 7413(b) and 7604(a); 40 C.F.R. § § 19.2 and 19.4, Heritage is liable for up to 37,500 dollars in penalties for each day that each violation occurred and continues to occur.

COUNT TWO
*Violations of Short-Term Limitations for SO₂ Emissions*

79.     Plaintiff realleges and incorporates by reference herein all above allegations and aforementioned exhibits.

80.     Heritage's Title V permit limits sulfur dioxide emissions from the Incinerator's stack to 11.34 pounds per hour and requires continuous compliance.

81.     Heritage violated this limitation on at least 70 occasions between April of 2011 and the present.  These violations include, at least, exceedances listed in the table below:

**SO₂ Emissions Exceedances**

| Date | Time | Duration (min.) | Violation Type | Reading (Max.) | Max. Limit |
|------|------|-----------------|----------------|----------------|------------|
| 5/2/11 | 7:40 | 13 | SO2 (lb/hr) | 14.40 | 11.34 |
| 5/5/11 | 4:40 | 31 | SO2 (lb/hr) | 11.60 | 11.34 |
| 5/27/11 | 4:00 | 34 | SO2 (lb/hr) | 13.60 | 11.34 |
| 5/31/11 | 10:26 | 162 | SO2 (lb/hr) | 28.00 | 11.34 |
| 6/3/11 | 17:56 | 116 | SO2 (lb/hr) | 20.10 | 11.34 |
| 6/3/11 | 22:07 | 68 | SO2 (lb/hr) | 30.30 | 11.34 |
| 6/4/11 | 7:01 | 66 | SO2 (lb/hr) | 28.70 | 11.34 |
| 6/6/11 | 7:18 | 63 | SO2 (lb/hr) | 18.40 | 11.34 |
| 6/11/11 | 7:13 | 26 | SO2 (lb/hr) | 12.60 | 11.34 |
| 6/16/11 | 11:47 | 47 | SO2 (lb/hr) | 11.90 | 11.34 |
| 6/17/11 | 15:02 | 97 | SO2 (lb/hr) | 35.30 | 11.34 |
| 6/17/11 | 21:03 | 17 | SO2 (lb/hr) | 11.90 | 11.34 |

| 8/6/11 | 1:47 | 52 | SO2 (lb/hr) | 15.70 | 11.34 |
|---|---|---|---|---|---|
| 8/15/11 | 9:00 | 50 | SO2 (lb/hr) | 13.50 | 11.34 |
| 8/19/11 | 5:12 | 35 | SO2 (lb/hr) | 11.60 | 11.34 |
| 8/21/11 | 16:50 | 54 | SO2 (lb/hr) | 17.10 | 11.34 |
| 8/26/11 | 9:53 | 50 | SO2 (lb/hr) | 13.50 | 11.34 |
| 8/29/11 | 7:01 | 21 | SO2 (lb/hr) | 55.50 | 11.34 |
| 8/29/11 | 15:23 | 51 | SO2 (lb/hr) | 16.60 | 11.34 |
| 8/31/11 | 21:51 | 51 | SO2 (lb/hr) | 16.50 | 11.34 |
| 9/4/11 | 8:30 | 78 | SO2 (lb/hr) | 31.90 | 11.34 |
| 9/4/11 | 11:44 | 62 | SO2 (lb/hr) | 22.50 | 11.34 |
| 9/6/11 | 17:36 | 56 | SO2 (lb/hr) | 18.40 | 11.34 |
| 9/8/11 | 20:43 | 50 | SO2 (lb/hr) | 13.40 | 11.34 |
| 9/12/11 | 11:38 | 81 | SO2 (lb/hr) | 33.10 | 11.34 |
| 9/13/11 | 18:05 | 3 | SO2 (lb/hr) | 11.50 | 11.34 |
| 9/13/11 | 18:17 | 15 | SO2 (lb/hr) | 13.30 | 11.34 |
| 9/13/11 | 18:55 | 7 | SO2 (lb/hr) | 12.80 | 11.34 |
| 11/21/11 | 16:55 | 14 | SO2 (lb/hr) | 12.00 | 11.34 |
| 1/3/12 | 6:19 | 38 | SO2 (lb/hr) | 14.30 | 11.34 |
| 1/3/12 | 9:16 | 48 | SO2 (lb/hr) | 15.60 | 11.34 |
| 1/13/12 | 6:12 | 70 | SO2 (lb/hr) | 16.50 | 11.34 |
| 2/6/12 | 6:25 | 46 | SO2 (lb/hr) | 18.40 | 11.34 |
| 2/10/12 | 6:49 | 41 | SO2 (lb/hr) | 20.20 | 11.34 |
| 2/17/12 | 7:21 | 10 | SO2 (lb/hr) | 11.50 | 11.34 |
| 2/24/12 | 21:50 | 49 | SO2 (lb/hr) | 17.30 | 11.34 |
| 3/16/12 | 23:50 | 6 | SO2 (lb/hr) | 11.60 | 11.34 |
| 3/23/12 | 20:50 | 6 | SO2 (lb/hr) | 11.90 | 11.34 |
| 4/8/12 | 11:17 | 36 | SO2 (lb/hr) | 12.10 | 11.34 |
| 6/13/12 | 5:48 | 4 | SO2 (lb/hr) | 11.80 | 11.34 |
| 7/13/12 | 8:50 | 62 | SO2 (lb/hr) | 22.40 | 11.34 |
| 11/11/12 | 12:03 | 76 | SO2 (lb/hr) | 44.40 | 11.34 |
| 11/14/12 | 9:58 | 43 | SO2 (lb/hr) | 14.20 | 11.34 |
| 11/19/12 | 0:59 | 32 | SO2 (lb/hr) | 14.30 | 11.34 |
| 12/29/12 | 16:47 | 69 | SO2 (lb/hr) | 30.10 | 11.34 |
| 1/11/13 | 17:42 | 35 | SO2 (lb/hr) | 14.00 | 11.34 |
| 1/15/13 | 9:59 | 30 | SO2 (lb/hr) | 14.30 | 11.34 |
| 1/15/13 | 12:25 | 29 | SO2 (lb/hr) | 12.60 | 11.34 |
| 1/15/13 | 16.43 | 189 | SO2 (lb/hr) | 45.30 | 11.34 |
| 1/21/13 | 3:00 | 27 | SO2 (lb/hr) | 12.60 | 11.34 |
| 1/22/13 | 19:31 | 72 | SO2 (lb/hr) | 34.40 | 11.34 |
| 2/4/13 | 3:20 | 29 | SO2 (lb/hr) | 15.00 | 11.34 |
| 2/18/13 | 22:34 | 44 | SO2 (lb/hr) | 15.90 | 11.34 |
| 3/27/13 | 3:47 | 3 | SO2 (lb/hr) | 11.40 | 11.34 |
| 3/27/13 | 4:14 | 61 | SO2 (lb/hr) | 24.90 | 11.34 |

| | | | | | |
|---|---|---|---|---|---|
| 6/2/13 | 20:44 | 4 | SO2 (lb/hr) | 11.50 | 11.34 |
| 6/7/13 | 15:39 | 48 | SO2 (lb/hr) | 14.10 | 11.34 |
| 8/3/13 | 8:15 | 22 | SO2 (lb/hr) | 12.00 | 11.34 |
| 9/2/13 | 3:40 | 51 | SO2 (lb/hr) | 17.00 | 11.34 |
| 10/25/13 | 3:20 | 47 | SO2 (lb/hr) | 13.80 | 11.34 |
| 1/11/14 | 7:27 | 33 | SO2 (lb/hr) | 14.10 | 11.34 |
| 1/16/14 | 23:01 | 48 | SO2 (lb/hr) | 15.40 | 11.34 |
| 1/28/14 | 18:06 | 48 | SO2 (lb/hr) | 15.20 | 11.34 |
| 2/8/14 | 2:18 | 44 | SO2 (lb/hr) | 14.30 | 11.34 |
| 2/21/14 | 15:39 | 57 | SO2 (lb/hr) | 17.90 | 11.34 |
| 5/13/14 | 6:57 | 4 | SO2 (lb/hr) | 15.40 | 11.34 |
| 5/25/14 | 19:13 | 36 | SO2 (lb/hr) | 12.10 | 11.34 |
| 6/14/14 | 5:30 | 106 | SO2 (lb/hr) | 22.90 | 11.34 |
| 9/25/14 | 23:07 | 10 | SO2 (lb/hr) | 11.90 | 11.34 |
| 7/8/15 | 16:35 | 187 | SO2 (lb/hr 3hr block) | 40.20 | 11.34 |

82.     By failing to meet the requirements for short-term $SO_2$ emissions contained in its Title V permit, Heritage has failed to comply with the Clean Air Act and the Ohio Air Pollution Control Act.

83.     Upon information and belief, Heritage has committed additional exceedances and violations of their short-term $SO_2$ limit, but these violations are currently hidden from the public because of Heritage's modified procedures to record and report excess emissions . Heritage is in the best position to know of these violations, and it is believed that these additional violations will be revealed in discovery.

84.     Under 42 U.S.C. § § 7413(b) and 7604(a); 40 C.F.R. § § 19.2 and 19.4, Heritage is liable for up to 37,500 dollars in penalties for each day that each violation occurred and continues to occur.

## COUNT THREE
### *Violations of Opacity Limitations*

85.     Plaintiff realleges and incorporates by reference herein all above allegations and

aforementioned exhibits.

86.     Heritage's Title V Permit and the federally approved Ohio SIP at OAC Rule 3745-17-

07(A) limit visible particulate emissions from the Incinerator's stack to 20% opacity, with

compliance measured using a 6-minute average.

87.     Heritage violated the opacity limitation stated in its Title V Permit and the federally

approved Ohio SIP on at least 18 separate occasions between April of 2011 and the present.

These violations are listed in the table below:

**Opacity Exceedances**

| Date | Time | Duration (min.) | Violation Type | Reading Percentage (Max.) | Max. Limit (%) |
|------|------|------|------|------|------|
| 5/17/11 | 7:30 | 6 | Opacity (%) | 21.90 | 20.00 |
| 10/1/11 | 20:42 | 6 | Opacity (%) | 53.20 | 20.00 |
| 10/3/11 | 1:24 | 6 | Opacity (%) | 24.20 | 20.00 |
| 1/5/12 | 5:24 | 6 | Opacity (%) | 27.70 | 20.00 |
| 1/13/12 | 6:54 | 6 | Opacity (%) | 27.20 | 20.00 |
| 1/14/12 | 21:12 | 6 | Opacity (%) | 35.80 | 20.00 |
| 2/6/12 | 6:06 | 6 | Opacity (%) | 33.80 | 20.00 |
| 2/10/12 | 6:42 | 6 | Opacity (%) | 34.80 | 20.00 |
| 2/10/12 | 19:12 | 6 | Opacity (%) | 26.30 | 20.00 |
| 4/3/12 | 12:30 | 12 | Opacity (%) | 46.90 | 20.00 |
| 9/5/12 | 6:54 | 6 | Opacity | 22.80 | 20.00 |

| | | | (%)<br>Opacity | | |
|---|---|---|---|---|---|
| 11/7/12 | 10:06 | 6 | (%)<br>Opacity | 22.20 | 20.00 |
| 8/11/13 | 8:54 | 6 | (%)<br>Opacity | 21.20 | 20.00 |
| 10/25/13 | 3:12 | 6 | (%)<br>Opacity | 20.30 | 20.00 |
| 2/8/14 | 2:12 | 12 | (%)<br>Opacity | 25.30 | 20.00 |
| 3/5/14 | 9:36 | 6 | (%)<br>Opacity | 20.50 | 20.00 |
| 2/7/15 | 18:36 | 6 | (%)<br>Opacity | 23.00 | 20.00 |
| 9/6/15 | 8:30 | 6 | (%) | 30.00 | 20.00 |

88.    The exemptions to opacity limits listed in Heritage's Title V Permit and OAC Rule 3745-17-07(A)(2) and (3) do not apply to the violations listed above.

89.    By failing to adhere to the opacity limits contained in its Title V permit and the federally approved Ohio SIP at OAC Rule 3745-17-07(A), Heritage has failed to comply with the Clean Air Act and the Ohio Air Pollution Control Act.

90.    Under 42 U.S.C. §§ 7413(b) and 7604(a); 40 C.F.R. §§ 19.2 and 19.4, Heritage is liable for up to 37,500 dollars in penalties for each day that each violation occurred and continues to occur.

COUNT FOUR
*Violations of Reporting Requirements*

91.    Plaintiff realleges and incorporates by reference herein all above allegations and aforementioned exhibits.

92.    Heritage's Title V permit states that Quarterly Reports must report excess emissions "in units of the applicable standards."  The hour is the unit of measurement in Heritage's Title V

permit for short-term $NO_x$ and $SO_2$ emissions. Until the 2014 Fourth Quarter Excess Emission Report, Heritage reported all excess $NO_x$ and $SO_2$ emissions based on a rolling 1-hour average.

93.     Starting with its 2014 Fourth Quarter Excess Emission Report and continuing with every Excess Emissions Report submitted thereafter, Heritage reported its $NO_x$ and $SO_2$ emissions using a 3-hour block average.

94.     This change in reporting improperly conceals Heritage's violations and circumvents the purpose of emission exceedance reporting under the CAA.

95.     Permit modification requests to relax reporting or recordkeeping terms or conditions require significant permit modification procedures under OAC Rule 3745-77-08, including public participation and review by affected states.

96.     Upon knowledge and belief, Heritage has not completed the proper permit modification procedures to relax the reporting requirements in its Title V permit from an hourly measurement to a 3-hour block measurement for $NO_x$ and $SO_2$ emissions.

97.     By reporting $NO_x$ and $SO_2$ emissions using a 3-hour block, Heritage has failed and continues to fail to meet its reporting requirements within its Title V permit in violation of the CAA.

98.     The violation for failure to properly report continues each day until the reports are properly submitted. Under 42 U.S.C. §§ 7413(b) and 7604(a); 40 C.F.R. §§ 19.2 and 19.4, Heritage is liable for up to 37,500 dollars in penalties for each day that each violation has occurred and continues to occur.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff respectfully requests that the Court grant the following relief:

A.  Declare that the Defendant has violated and is in violation of the CAA and The Ohio Air Pollution Control Act;

B.  Declare that the Defendant has violated and is violating the Incinerator's emissions requirements pursuant to its Title V permit;

C.  Order the Defendant to comply with all provisions of their Title V permit, the CAA, and The Ohio Air Pollution Control Act.

D.  Issue a preliminary and permanent injunction that prevents the Defendant from operating the Incinerator until such operation is in compliance with its Title V permit, the CAA, and the Ohio Air Pollution Control Act;

E.  Assess civil penalties against the Defendant for 37,500 dollars per day per violation, as provided by 42 U.S.C. §§ 7413(b), 7604(a) and 40 C.F.R. Part 19 (adjustment of civil monetary penalties);

F.  Award Plaintiff the costs of litigation, including reasonable attorneys' fees; and,

G.  Grant such other relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff respectfully requests a jury trial on all issues so triable.

Dated: June 20, 2016                    Respectfully submitted by:

/s/ James Yskamp_____
James Yskamp, Esq.
Ohio Bar No. 0093095
Email: jyskamp@fairshake-els.org

Emily A. Collins, Esq.
Ohio Bar No. 0093202
Email: ecollins@fairshake-els.org


Fair Shake Environmental Legal Services
159 S. Main Street, Suite 1030
Akron, OH 44308
Telephone: (412) 742-4615
Fax: (412) 291-1197


*Counsel for:*
    *Save Our County, Inc.*
    *P.O. Box 1242*
    *East Liverpool, OH 43920*

**CERTIFICATE OF SERVICE**

    I, James Yskamp, hereby certify that a true and correct copy of the foregoing Complaint was filed electronically and sent to all parties and persons on this 20th day of June, 2016, via the means and at the addresses listed below as follows:

| | |
|---|---|
| Heritage Thermal Services, Inc. | *Via Certified U.S. Mail,* |
| Registered Agent | *return receipt requested* |
| C T Corporation System | |
| 1300 E 9th Street | |
| Cleveland, Ohio 44114 | |
| cc: | *Via Certified U.S. Mail,* |
| Stewart Fletcher | *return receipt requested* |
| General Manager | |
| 1250 St. George Street | |
| East Liverpool, Ohio 43920 | |

| | |
|---|---|
| Gina McCarthy | *Via Certified U.S. Mail,* |
| Administrator | *return receipt requested* |
| U.S. Environmental Protection Agency | |
| 1200 Pennsylvania Ave., N.W. (Mailcode: 1101A) | |
| Washington, D.C. 20460 | |

| | |
|---|---|
| Loretta Lynch | *Via Certified U.S. Mail,* |
| U.S. Attorney General | *return receipt requested* |
| U.S. Department of Justice | |
| 950 Pennsylvania Avenue, NW | |
| Washington, D.C. 20530-0001 | |

Date: June 20, 2016        By /s/ James Yskamp_____
                              James Yskamp #0093095
                              *Counsel for Plaintiff*