UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SAVE OUR COUNTY, INC., | ) |
| | ) CASE NO. 4:16-CV-1544-BYP |
| Plaintiff, | ) |
| | ) |
| v. | ) JUDGE: BENITA Y. PEARSON |
| | ) MAGISTRATE JUDGE GEORGE J. LIMBERT |
| HERITAGE THERMAL SERVICES, INC., | ) |
| | ) **ANSWER TO COMPLAINT** |
| Defendant. | ) |
| | ) |

## ANSWER TO COMPLAINT

Defendant Heritage Thermal Services, Inc. ("Heritage"), by and through its undersigned counsel, hereby submits its Answer to the Complaint filed by Plaintiff Save Our County, Inc. ("SOC" or "Plaintiff").

For its Answer to Plaintiff's Complaint, Heritage responds as follows:[1]

### (NATURE OF THE ACTION)

1. Paragraph 1 characterizes Plaintiff's actions and requires no response. To the extent a response is deemed necessary, Heritage is without sufficient information or knowledge

---

[1] Apart from the 98 numbered paragraphs, the Complaint contains headings and subheadings, to which no responsive pleading is required. To the extent a response is deemed necessary, Heritage denies every allegation in every heading and subheading contained in the Complaint.

US.107670636.01

regarding the truth or accuracy of Plaintiff's allegations regarding why it brought this lawsuit, and therefore deny the same. Heritage denies the remaining allegations contained in Paragraph 1

2. Paragraph 2 characterizes Plaintiff's actions and requires no response. To the extent a response is deemed necessary, Heritage admits that Plaintiff has alleged that it is bringing this action under the citizen enforcement provision of the Clean Air Act. Heritage denies the remaining allegations contained in Paragraph 2.

3. Denied.

**(JURISDICTION AND VENUE)**

4. Paragraph 4 calls for legal conclusions and requires no response, but to the extent that a response is required, Heritage denies the allegations contained in Paragraph 4.

5. Paragraph 5 calls for legal conclusions and requires no response, but to the extent that a response is required, Heritage denies the allegations contained in Paragraph 5.

6. Heritage admits that Plaintiff gave notice of alleged violations and its intent to sue on or about November 4, 2015 which was prior to the commencement of this lawsuit, and admits that a copy of said notice letter was attached as Exhibit 1 to the Complaint. The first clause of Paragraph 6 calls for a legal conclusion and requires no response, but to the extent a response is required, Heritage denies it. Heritage is without knowledge or information sufficient to form a belief as to the truth of whether or not Plaintiff gave notice to "all other required parties" and therefore denies that allegation.

7. Heritage admits that more than sixty (60) days have passed since it received the notice letter that was attached to the Complaint as Exhibit I. Heritage denies the remaining allegations in Paragraph 7.

8. Heritage admits the allegation in sentence 1 that venue is proper in this Court for Plaintiffs claims. Heritage denies the remaining allegations contained in Paragraph 8.

9. Heritage admits the allegation that venue is proper in the Court and admits that its hazardous waste incinerator is located in this judicial district. Heritage denies the remaining allegations in Paragraph 9.

**(PARTIES)**

10. Heritage is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 10, and therefore denies them.

11. Heritage is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 11, and therefore denies them.

12. Admitted.

13. Heritage admits that it owns and operates a hazardous waste incinerator in East Liverpool, Ohio and admits that the incinerator is located near the Ohio River. Heritage admits that there are houses approximately 320 feet north of the 1250 St. George Street address. Heritage also admits the allegations in the third sentence of Paragraph 13. The fourth sentence of Paragraph 13 characterizes a Permit and a permit application, which documents speak for themselves and require no response. With respect to the remaining allegations in Paragraph 13, Heritage is without knowledge or information sufficient to form a belief as to the truth of those allegations, and therefore denies them.

14. Heritage is without knowledge or information sufficient to form a belief as to where Plaintiff's members live, work and recreate and therefore denies that allegation. With respect to the remaining allegations in Paragraph 14, Heritage denies them.

US.107670636.01

15. Heritage admits that a document entitled "Affidavit of Standing By Sandra Estell" was attached to the Complaint as Exhibit 2. Heritage is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 15, and therefore denies them.

16. Denied.

**(STATUTORY AND REGULATORY BACKGROUND)**

17. Paragraph 17 states a legal conclusion, which requires no response.

18. Paragraph 18 states a legal conclusion, which requires no response.

19. Paragraph 19 states a legal conclusion, which requires no response.

20. Paragraph 20 states a legal conclusion, which requires no response.

21. Paragraph 21 states a legal conclusion, which requires no response.

22. Paragraph 22 states a legal conclusion, which requires no response.

*(Title V Operating Permit Program)*

23. Paragraph 23 states a legal conclusion, which requires no response.

24. Paragraph 24 states a legal conclusion, which requires no response.

25. Paragraph 25 states a legal conclusion, which requires no response.

26. Heritage admits that the Ohio EPA administers the Title V program in Ohio. Heritage admits that rules are found at OAC Rule 3745-77-01 through OAC Rule 3745-10. The remaining allegations in Paragraph 26 state a legal conclusion, which requires no response.

*(Citizenship Enforcement Under the CAA)*

27. Paragraph 27 states a legal conclusion, which requires no response.

28. Paragraph 28 states a legal conclusion, which requires no response.

29. Paragraph 29 states a legal conclusion, which requires no response.

30. Heritage is without information or belief sufficient to form a belief as to the truth of the allegations contained in paragraph 30 and therefore denies them.

31. Heritage admits that it is a "person" within the meaning of 42 U.S.C. § 7602(e). The remainder of Paragraph 31 states a legal conclusion which requires no response. To the extent a response is required, Heritage denies the allegations.

## (FACTUAL BACKGROUND)

*(Siting of the Incinerator)*

32. Heritage admits that its hazardous waste incinerator is located near the Ohio River, within the 500-year floodplain, and admits that Plaintiff opposed siting the facility at that location. Heritage is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 32, and therefore denies them.

33. Heritage admits that there are vacant homes in the area and that the elementary school shut down for lack of enrollment and has now been demolished. Heritage is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 33, and therefore denies them.

34. Heritage is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 34, and therefore denies them.

35. Paragraph 35 states a legal conclusion, which requires no response. To the extent a response is required, Heritage denies the allegations.

36. Heritage admits that East Liverpool has a population of approximately 11,000 people. Heritage is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 36, and therefore denies them.

37. Heritage is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 37, and therefore denies them.

*(Heritage's Title V Air Permit)*

38. Admitted.

39. Paragraph 39 characterizes a Title V permit and Ohio regulations, which documents speak for themselves and require no response. Heritage denies the remaining allegations in Paragraph 39.

40. Paragraph 40 characterizes a Title V permit and Ohio regulations, which documents speak for themselves and require no response.

41. Heritage admits that it is required to submit quarterly Excess Emissions Reports ("Quarterly Reports"). Those Quarterly Reports speak for themselves and require no response. Heritage denies any remaining allegations in Paragraph 41.

42. Heritage's Title V Permit speaks for itself, and no response to the allegations in Paragraph 42 is required. To the extent that a response is required, Heritage denies the allegations in Paragraph 42.

*(Operation of the Hazardous Waste Incinerator)*

43. Denied.

44. Heritage admits that the National Ombudsman for the US EPA issued a Preliminary Report on October 20, 2000 in which preliminary recommendations were made, which Preliminary Report speaks for itself. Heritage affirmatively states that the Preliminary Report provided recommendations to the EPA Administrator, the EPA Regional Administrator, and the Chairman of the White House Council on Environmental Quality for decision-making. Heritage affirmatively states that in a November 20, 2000 memorandum to the EPA Assistant

Administrator, EPA's Science Policy Advisor characterized the Ombudsman's Preliminary Report as "incomplete and misleading, with conclusions not warranted by the facts." Heritage affirmatively states that EPA's Science Policy Advisor stated that she did not find "any credible evidence in [the Preliminary Report] to question the low risks to human health that were derived in the multi-disciplinary risk assessment performed by EPA" for the facility. The EPA Science Policy Advisor emphasized the Ombudsman's "strictly advisory function" and criticized the implication in the Preliminary Report that "legally-binding, independent decision-making is a part of the Ombudsman's function" and highlighted the fact that "[t]he Ombudsman is not a court and cannot order the agency to take action." Heritage admits that the Ombudsman's preliminary recommendations were not followed.

45. Heritage admits that EPA has alleged violations of the Maximum Achievable Control Technology (MACT) provisions of Heritage's Title V Permit that trigger High Priority Violation oversight under the agency's Timely and Appropriate Enforcement Response to High Priority Violations Policy as revised on August 25, 2014, and Heritage affirmatively states that these alleged violations are unrelated to the $NO_x$, $SO_2$, and opacity exceedances alleged in the Complaint and that it has been working with EPA cooperatively to resolve the MACT issues.

46. Heritage admits that Ohio EPA issued to Heritage the documents attached as Exhibits 4-8 to the Complaint. Those documents speak for themselves and require no response. Heritage denies the remaining allegations in Paragraph 46 of the Complaint.

47. Heritage admits that there was an ash release at its facility on July 13, 2013. Heritage admits that, as a precaution, it advised residents to wash fruits and vegetables from their gardens. Heritage also admits that Ohio EPA issued to Heritage the document attached as

7

Exhibit 9 to Complaint, which document speaks for itself and requires no response. Heritage denies the remaining allegations in Paragraph 47 of the Complaint.

48. Heritage admits it received the document attached as Exhibit 10 to the Complaint, which document speaks for itself and requires no response. Heritage also admits it is in discussions with US EPA concerning the contents of Exhibit 10. Heritage denies any remaining allegations contained in Paragraph 48.

*Reporting of Excess Emissions from the Incinerator*

49. Heritage admits that it is required to submit Quarterly Excess Emission Reports. Those reports and the referenced Title V permit speak for themselves and no response is required. Heritage denies any remaining allegations in Paragraph 49.

50. The allegations in Paragraph 50 refer to the Title V permit and certain regulations, which documents speak for themselves and require no further response. Heritage denies any remaining allegations in Paragraph 50.

51. The allegations in Paragraph 51 refer to the Title V permit, which document speaks for itself and requires no further response. Heritage denies any remaining allegations in Paragraph 51.

52. The allegations in Paragraph 52 refer to the Title V permit, which document speaks for itself and require no further response. Heritage denies any remaining allegations in Paragraph 52.

53. Heritage admits that prior to its 2014 Fourth Quarter Excess Emission Report, it reported excess short-term $NO_x$ and $SO_2$ emissions using a 1-hour rolling average. Heritage admits that the referenced Excess Emission Reports are attached as to the Complaint as

Exhibits 11, 12, and 13. Heritage denies the remaining allegations in Paragraph 53 of the Complaint.

54. Heritage admits that in a letter dated April 19, 2010, which is attached to the Complaint as Exhibit 6, Pamela Korenewych of the Ohio EPA requested that Heritage "submit a control plan and schedule to minimize or eliminate SOx, NOx, THC, and opacity exceedances." Heritage denies the remaining allegations in Paragraph 54.

55. Denied.

56. Paragraph 56 states legal conclusions, which require no response.

57. Paragraph 57 states legal conclusions, which require no response.

58. Paragraph 58 states legal conclusions, which require no response.

59. Denied.

60. Heritage admits it received a letter from Ohio EPA dated December 23, 2014 that states in pertinent part that "[t]he excess emission reports (all prior to this letter) that have been submitted by Heritage do not contain enough information to determine the NOx and SOx emission limitation compliance status." The letter also states in pertinent part that:

> It has been determined by our Central Office (CO) that since a CEMS is used to demonstrate compliance with the applicable emission limitations, a 3-hour time frame is to be used to determine if the emission limitation has been exceeded.
>
> For all future reports, the Ohio EPA expects Heritage to continue to obtain one-minute averages and to continue to add the current one-minute average to the previous 59 one-minute averages. However, Heritage will now compare the emission limitation to a 3-hour block average of CEMS results that is identified above.

61. Heritage admits the allegations in the first sentence of Paragraph 61. Heritage also admits that the Fourth Quarter 2014 through Third Quarter 2015 Excess Emission Reports were attached to the Complaint as Exhibit 14, which documents speak for themselves.
9
US.107670636.01

62. Denied.

63. Denied.

64. Heritage admits that it received the document dated January 21, 2016 that was attached to the Complaint as Exhibit 15, which document speaks for itself. Heritage denies the remaining allegations contained in Paragraph 64.

65. Paragraph 65 states legal conclusions, which requires no response.

66. Heritage is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 66 and therefore denies them.

67. Heritage admits it is in talks with US EPA. Heritage denies the remainder of the allegations in Paragraph 67.

*(Consequences of Defendant's Unlawful Actions)*

68. Denied.

69. Denied.

70. Heritage is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 70, and therefore denies them.

71. Heritage is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 71, and therefore denies them.

72. Heritage is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 72, and therefore denies them.

## (VIOLATIONS OF THE CLEAN AIR ACT AND THE OHIO AIR POLLUTION CONTROL ACT)

### (COUNT ONE)
*(Violations of Short-Term Limitations for $NO_x$ Emissions)*

73. Paragraphs 1 through 72 of Heritage's Answer are incorporated herein by reference.

74. Paragraph 74 characterizes a Title V permit, which document speaks for itself, and requires no response. Heritage denies any remaining allegations in Paragraph 74.

75. Denied.

76. Paragraph 76 states legal conclusions, which require no response. To the extent that a response is deemed necessary, Heritage denies the allegations in Paragraph 76.

77. Denied.

78. Paragraph 78 states for legal conclusions and requires no response, but to the extent that a response is required, Heritage denies the allegations in Paragraph 78.

### (COUNT TWO)
*(Violations of Short-Term Limitations for $NO_x$ Emissions)*

79. Paragraphs 1 through 78 of Heritage's Answer are incorporated herein by reference.

80. Paragraph 80 characterizes a Title V permit, which document speaks for itself, and requires no response. Heritage denies any remaining allegations in Paragraph 80.

81. Denied.

82. Paragraph 82 states legal conclusions, which require no response. To the extent a response is deemed necessary, Heritage denies the allegations.

83. Denied.

84. Paragraph 84 calls for legal conclusions and requires no response, but to the extent that a response is required, Heritage denies the allegations in Paragraph 84.

(COUNT THREE)
*(Violations of Opacity Limitations)*

85. Paragraphs 1 through 84 of Heritage's Answer are incorporated herein by reference.

86. Paragraph 86 characterizes a Title V permit and Ohio regulations, which documents speak for themselves, and requires no response. Heritage denies any remaining allegations in Paragraph 86.

87. Denied.

88. Denied.

89. Denied.

90. Paragraph 90 calls for legal conclusions and requires no response, but to the extent that a response is required, Heritage denies the allegations in Paragraph 90.

(COUNT FOUR)
*(Violations of Reporting Requirements)*

91. Paragraphs 1 through 90 of Heritage's Answer are incorporated herein by reference.

92. The first and second sentences of Paragraph 92 characterize a Title V permit, which document speaks for itself and requires no response. To the extent a response is required, Heritage denies the allegations contained in the first and second sentence. Heritage admits the allegations in the third sentence of Paragraph 92, and affirmatively states that Ohio EPA directed Heritage to change its reporting method to a 3-hour block average.

US.107670636.01

93. Heritage admits the allegations in Paragraph 93, and affirmatively states that this change in reporting was at the direction of Ohio EPA.

94. Denied.

95. Paragraph 95 calls for legal conclusions and requires no response, but to the extent that a response is required, Heritage denies the allegations in Paragraph 95.

96. Denied

97. Denied.

98. Paragraph 98 calls for legal conclusions and requires no response, but to the extent that a response is required, Heritage denies the allegations in Paragraph 98.

(PRAYER FOR RELIEF)

Heritage denies that Plaintiff is entitled to any of the relief requested in its Prayer for Relief.

(Jury Trial Demanded)

Heritage denies that Plaintiff is entitled to a jury trial of all issues.

## GENERAL DENIAL

Heritage denies all allegations of the Complaint not expressly admitted in the preceding paragraphs.

## AFFIRMATIVE DEFENSES[2]

1. Plaintiff has failed to state claims upon which relief may be granted.

2. To the extent Plaintiff seeks to assert claims not included or adequately described in its letter dated November 4, 2015, this Court is without jurisdiction to hear those claims under 42 U.S.C. § 7604(a).

---

[2] In asserting its affirmative defenses, Heritage does not assume the burden to establish any fact or proposition where that burden is properly imposed on Plaintiff.

13

3. Plaintiff's claims are barred, in part, by the doctrine of laches.

4. Plaintiff's allegations with respect to short-term emission limitations and/or opacity exceedances related to upset or malfunction are precluded, in whole or in part, based on the applicable upset and malfunction provisions of the Permit or the Ohio SIP.

5. At all times and under all circumstances relevant to Plaintiff's Complaint, Heritage operated the facility using appropriate engineering practices and best operational practices and in a manner consistent with good air pollution control practice for minimizing emissions.

6. Plaintiff's claims are barred because Plaintiff lacks standing.

7. Plaintiff's claims are barred, in whole or in part, as moot.

8. Plaintiff's claims are barred, in whole or in part, because Plaintiff has not suffered the injuries or damages alleged or any other injuries or damages resulting from Heritage's actions.

9. Plaintiff's claims are barred, in whole or in part, because Plaintiff's claims cannot be redressed by the relief requested.

10. Plaintiff's claims should be barred, in whole or in part, by the doctrine of abstention.

11. Plaintiff's claims are barred by the doctrines of waiver and estoppel.

12. Heritage gives notice that it intends to rely upon such other defenses as may become available or apparent during the course of discovery and trial, and thus reserve the right to amend its defenses.

13. Heritage reserves the right to add and/or amend these affirmative defenses as additional information and documents become available.

US.107670636.01

WHEREFORE, Defendant Heritage Thermal Services, Inc. requests that this Court deny and dismiss Plaintiff's claims, award Heritage its costs, disbursements, and attorneys' fees under 42 U.S.C.§ 7604(d) and other applicable law and award such other relief as the Court deems proper.

Respectfully submitted,

FAEGRE BAKER DANIELS LLP

By: /s/ Colin C. Deihl
Colin C. Deihl *(Pro Hac Vice Admission)*
Olivia D. Lucas *(Pro Hac Vice Admission)*
3200 Wells Fargo Center
1700 Lincoln Street
Denver, Colorado 80203
Telephone: (303) 607-3500
Facsimile: (303) 607-3600
Email: colin.deihl@FaegreBD.com
Email: olivia.lucas@FaegreBD.com

FAEGRE BAKER DANIELS LLP
Paul A. Wolfla (Ohio Bar No. 0069801)
300 N. Meridian Street, Suite 2700
Indianapolis, Indiana 46204
Telephone: (317) 237-1241
Facsimile: (317) 237-1000
Email: paul.wolfla@FaegreBD.com

*Counsel for Heritage Thermal Services, Inc.*

US.107670636.01

## CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2016, a copy of the foregoing **ANSWER TO COMPLAINT** was filed electronically. Notice of this filing will be sent to all ECF-registered counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

_____
Colin C. Deihl